**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) Criminal No. 13-252-17 |
| | ) |
| **CHAZ LLOYD**, | ) |
| | ) |
| Defendant. | ) |

## OPINION

CONTI, Chief District Judge

On May 14, 2015, defendant Chaz Lloyd ("defendant") filed a motion for a hearing to review and reconsider his detention status. (ECF No. 861.) This court conducted a de novo review and considered the transcript of the hearing held before the magistrate judge who ordered defendant be detained pending trial, the pleadings in this case, and the pretrial services report prepared by the pretrial services officer. The court held two hearings during which the parties made argument and entered testimony and exhibits into evidence. The court granted defendant's motion to the extent he requested a hearing with respect to his detention status, but denied the motion in all other respects. The court ordered that defendant be detained without bond pending trial. This opinion sets forth the reasons for the court's decision, which were detailed on the record.

**I.     Background**

    **A.     Procedural History[1]**

---

[1]     Defendant at the time of the October 7, 2015 hearing was detained for approximately twenty months. Defendant did not argue that his due process rights were violated by the length of his pretrial detention. The court on the record, however, considered the factors set forth in United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986), to determine whether defendant's due process rights were implicated in this case. The court considered the length of the detention, the

On February 25, 2014, a grand jury returned a four-count superseding indictment at criminal action number 13-252. Defendant was named in count one of the superseding indictment charging him with conspiracy to distribute and possess with intent to distribute five kilograms or more of methamphetamine, and one kilogram or more of heroin, from January 2011 to September 2013, a violation of 21 U.SC. § 846. (ECF No. 228.) The offense at count one of the superseding indictment carries a statutory minimum term of imprisonment of ten years if the conviction is the defendant's first final felony drug conviction. 18 U.S.C. § 841(a)(1)(A)(i) and (vii). The offense at count one of the superseding indictment carries a statutory minimum term of imprisonment of twenty years if an information is filed showed that the conviction is the defendant's second final felony drug conviction. Id.

A detention hearing was held before a magistrate judge on August 4, 2014. (ECF No. 524.) The magistrate judge determined the government met its burden to show by clear and convincing evidence that defendant posed a danger to the community and entered an order of detention for defendant pending trial. (ECF No. 525.) The magistrate judge determined that defendant did not present a risk of flight. (Id.) On May 14, 2015, defendant filed the motion for hearing to review and reconsider detention status. (ECF No. 861.) On August 31, 2015, the government filed its response to defendant's motion. (ECF No. 948.) On September 21, 2015, the undersigned judge held a de novo hearing with respect to defendant's detention status. Defendant's counsel at the hearing requested additional time to brief the issues raised by the motion for reconsideration. The court granted the request to continue the hearing and permitted defendant to file supplemental briefing. On September 29, 2015, defendant filed a supplemental

---

complexity of the case, and whether the strategy of one side or the other needlessly added to the complexity, and determined defendant's due process rights were not violated by the length of his detention because, among other things, he requested a continuance or otherwise caused the delay of trial in this matter for eighteen of the twenty months of his incarceration.

brief. (ECF No. 970.) On October 7, 2015, the detention hearing was concluded. After reviewing the transcript of the August 4, 2014 detention hearing, and taking into consideration the evidence and arguments presented by the parties at the hearings held on September 21, 2015, and October 7, 2015, the court ordered defendant be detained pending trial.

### B. Factual Background

At the detention hearing before the magistrate judge on August 4, 2014, the government entered various exhibits into evidence and presented the testimony of Matthew Truesdell ("Truesdell"), a narcotics detective with the City of Pittsburgh Bureau of Police ("Pittsburgh Police"), who is assigned to a task force with the Drug Enforcement Administration. (H.T. 8/4/2014 (ECF No. 697) at 7.) At the same hearing, defendant presented the testimony of Erika Williams ("defendant's girlfriend"), his girlfriend and mother of his child, and Juan Lloyd ("defendant's brother"), his brother. (Id. at 21.) At the hearing held before the undersigned judge on September 29, 2015, defendant entered three exhibits into evidence and again presented testimony from his girlfriend and brother. At the continued detention hearing held on October 7, 2015, the government entered exhibits into evidence and proffered—with the consent of defendant—the testimony of Jamie Bell, a special agent with the Internal Revenue Service ("Bell"). Bell was made available to defendant for cross-examination. Based upon the record and the pretrial services report, the following factual background was developed.[2]

The conspiracy alleged in the indictment was headed in the Pittsburgh, Pennsylvania, area by Luis Carde ("Carde"), one of defendant's codefendants. A confidential source obtained

---

[2] The court after the hearing held on October 7, 2015, received one letter from defendant's mother, Cassandra Lloyd, and one letter from his girlfriend. The letters recount the same or similar information presented by defendant's girlfriend and brother at the hearings held on August 4, 2014, and September 21, 2014. While the court reviewed the letters, their contents did not affect the court's determination that defendant should be detained pending trial.

3

by the government identified defendant as one of the participants in the alleged conspiracy. Law enforcement conducted a wiretap investigation initiated in April 2013, which lasted several months, involved the interception of thousands of telephone calls, and confirmed that defendant was part of the alleged conspiracy (the "wiretap investigation").

The wiretap investigation intercepted telephone calls made from and received by Jason Beggarly ("Beggarly"), one of defendant's codefendants in this case. The government at the detention hearing held on October 7, 2015, presented "line sheets"[3] from various telephone calls made or received by Beggarly that were intercepted as part of the wiretap investigation in June 2013. Bell testified that it is not uncommon for individuals engaged in narcotics trafficking to use coded language to refer to narcotics. Defendant was not a party to any of the telephone calls presented by the government, and drugs were not explicitly mentioned during any of the telephone conversations presented by the government.

The first line sheet presented by the government was dated June 10, 2013 (Gov't Ex. 1a), and detailed a telephone conversation between Beggarly and an individual named Joel. According to the agents conducting the wiretap investigation, Beggarly in the telephone conversation told Joel that he had a small amount of drugs available for cash purchase, and he intended to go out of town in the next couple days to obtain more drugs.

The second line sheet presented by the government was also dated June 10, 2013 (Gov't Ex. 2a), and detailed a telephone conversation between Beggarly and an individual named Dustin. According to the agents monitoring the wiretap investigation:

– Beggarly in the conversation asked Dustin when he was going to pay him the money he owed him;

---

[3]  The "line sheets" are documents that provide the transcription of telephone calls intercepted as part of the wiretap investigation.

4

- Beggarly wanted to take the money paid by Dustin with him when he went out of town;

- Dustin told Beggarly that Dustin had "nine" to give Beggarly, i.e., Dustin had nine thousand dollars to give to Beggarly.

The government presented three other line sheets all dated June 11, 2013(Gov't Exs. 3a, 4a, and 5a), which detailed conversations between Beggarly and three other individuals. Beggarly in the conversations asked the individuals for money that they owed him because he intended to take the money with him when he went out of town.

On June 11, 2013, Beggarly sent the following text message: "Detroit just a day trip." Agents monitoring the wiretap investigation believed based upon the foregoing telephone calls and text message that Beggarly intended to travel to Detroit, Michigan to obtain drugs.

The government presented a text message dated June 11, 2013 (Gov't Ex. 7a), that was sent from Beggarly to Leigh Fiumara, one of Beggarly's associates that provided: "Jazzy cant go till thurs ill call u soon as I get home in 3o." According to the agents monitoring the wiretap investigation, Jazzy is an alias for defendant. The agents interpreted Beggarly's text message to mean that defendant could not go on the trip, i.e., Beggarly's trip to Detroit, Michigan, until Thursday.

The government presented a line sheet dated June 14, 2013 (Gov't Ex. 9a), which detailed a telephone conversation between Beggarly and the mother of his children. Beggarly during the conversation told her that he was sorry for taking her car, needed the car to travel to Detroit, Michigan, and was currently in a hotel in Michigan with Jazzy.

The government presented a line sheet dated June 15, 2013 (Gov't Ex. 8a), which detailed a telephone conversation between Beggarly and Joe Lambert ("Lambert"). According to the agents monitoring the wiretap investigation, Beggarly during that conversation told Lambert

that he went to Detroit, Michigan, he obtained an amount of drugs, and the trip was not as good as previous trips.

Truesdell at the hearing held on August 4, 2014, testified that, among other things, a confidential informant reported that defendant had a source of cocaine in Detroit, Michigan, and in July 2013, defendant's vehicle traveling from Detroit, Michigan, was pulled over by law enforcement and cocaine was found in the vehicle. Charges against defendant stemming from that incident were dismissed.

The government presented letters sent by Carde while he was incarcerated on charges unrelated to this case to Lamar Miles ("Miles"), a codefendant in this case. Carde while incarcerated made telephone calls during which he indicated that he was going to mail a letter to Miles. In October 2013, a search warrant was executed on Miles' home based upon his involvement in this case. Agents during the search found, among other things, two letters sent by Carde to Miles, a list detailing the names of people who owed money to Carde (the "owe sheet") (Gov't Ex. 10a),[4] and a photocopy of the owe sheet sent by Carde to Miles (Gov't Ex. 11a). The owe sheet listed names and numbers next to the names. "8300" is listed next to "Jazzy" on the owe sheet. (Id.) "Snow plow" and "3200/2600" is listed next to illegible initials on the owe sheet. (Id.)

In one of the letters sent by Carde to Miles, Carde instructed Miles to collect debts for him from various people who owed him money. According to the agents monitoring the wiretap investigation, the owe sheet reflected that Jazzy owed Carde $8,300. The agents believed that government exhibit 11a was a photocopy of the owe sheet on which Miles took notes to indicate the debts paid by the various people listed on the owe sheet. Carde in one of the letters to Miles

---

[4] Government exhibit 10a consists of the two letters from Carde to Miles, the owe sheet, a sketched floor plan of '4825 Patterson," and five other pieces of paper.

discussed a floor plan of a house. Exhibit 10a also included, among other things, a sketched floor plan of Carde's home and an envelope from the Allegheny County Jail sent by "Dennis King" to "L. Miles."

### C. Defendant's Personal Background[5]

#### 1. Familial Associations

According to the pretrial services report prepared by the United States Probation and Pretrial Services Office, "defendant reported he has lived in the Western District of Pennsylvania his entire life." (Pretrial Services Report at 2.) Defendant's mother lives in West Mifflin, Pennsylvania, and his father is deceased. (Id. at 1.) Defendant maintains regular contact with his mother and brother, Juan Lloyd. (Id.) Defendant has one child, and is in a relationship with his child's mother, i.e., his girlfriend, Ericka Williams. According to defendant's girlfriend and brother, defendant has a great relationship with his child and is a great father to the child. (H.T. 8/4/14 (ECF No. 697) at 41-42.)

Defendant's girlfriend, who works for Peoples Natural Gas, is willing to serve as a third-party custodian for defendant, abide by all conditions and responsibilities imposed by the court, permit him to live with her while he is released on bond, and report to the court if defendant violated conditions of bond. (Pretrial Services Report at 2; H.T. 8/4/14 (ECF No. 697) at 42.) Defendant's girlfriend rents her home and lives there with her daughter and is willing to install a landline at the residence to accommodate any electronic monitoring condition imposed by the court. (Id. at 41-42.) Defendant's girlfriend is employed full time. If defendant is released on

---

[5] Defendant's personal background information was obtained from exhibits entered into evidence and testimony given at the hearings held in this case on August 4, 2014, and September 29, 2015, and the pretrial services report dated February 26, 2014.

bond, he could help her take care of their child by watching her when she does not have school and defendant's girlfriend is at work.

Defendant's brother, who is employed as a truck driver, is willing to serve as a third-party custodian for defendant, help him abide by conditions of bond, and monitor defendant during the day because he is collecting workers' compensation benefits and not currently working.

### 2. Work History and Employment Prospects

Defendant was employed by Two Men and a Truck from December 1, 2010, through October 1, 2011. (Pretrial Services Report at 2.) Defendant earned $1,105 per month while employed by Two Men and a Truck. (Id.) Prior to his incarceration, and starting on May 1, 2013, defendant was employed by 30 Bar where he earned $1,300 per month. (Id.) Defendant's assets include a two vehicles and a residence, totaling $25,200. (Id.) Defendant's liabilities total $1,000. (Id.) His estimated net worth is $24,200. (Id.) Defendant's estimated monthly cash flow is $563. (Id. at 3.) Defendant does not pay child support. (Id. at 2.)

Defendant's girlfriend testified that she would assist defendant in obtaining employment. The brother of defendant's girlfriend is a member of the United Brotherhood of Carpentry (the "union"), which is looking to hire a new member. According to defendant's girlfriend, he needs only to take a test to obtain employment from the union. Defendant's brother testified that defendant prior to his arrest purchased homes in need of repair, fixed them, and rented or sold them.

Defendant while incarcerated received one certificate for successfully completing Level 2 of the pre-apprenticeship test preparation class from the Allegheny County Intermediate Unit

(Def. Ex. 2), and one certificate for successful mastery of level 3 basic computer literacy instruction with the adult education staff at the Allegheny County Jail (Def. Ex. 2).

   **3. Criminal History**

On November 28, 2007, defendant was arrested for: (1) delivery/possession with intent to deliver a controlled substance; (2) possession of a controlled substance; (3) possession of drug paraphernalia; and (4) tampering with/fabricating physical evidence. On December 16, 2010, defendant pleaded guilty to delivery/possession with intent to deliver a controlled substance, which is a felony offense. The other charges were withdrawn. Truesdell at the August 4, 2014, hearing detailed the events of defendant's arrest on November 28, 2007, as follows:

> Plainclothes narcotics detectives were working in the Garfield section of the city of Pittsburgh. They observed a vehicle with tinted windows. Basically they conducted an investigation on this vehicle, swung behind it, followed the vehicle. As they were following the vehicle, they noticed some objects, I believe they were baggies, being thrown out of the vehicle.
>
> Mr. Lloyd was subsequently stopped. Detectives went back to the location where those baggies were thrown from the vehicle and recovered them.
>                        …
> [I]t was crack cocaine.
>                        …
> [Defendant] pled guilty to the offense, felony drug offense.

(H.T. 8/4/2014 (ECF No. 697) at 9.) Defendant committed the foregoing felony drug offense while on probation at criminal docket number 13281-2005. (Pretrial Services Report at 5-6.)

On February 18, 2009, defendant was arrested for: (1) possession of a controlled substance; (2) delivery/possession with intent to deliver a controlled substance; (3) possession or delivery of a small amount of a controlled substance; (4) possession of drug paraphernalia. (Pretrial Services Report at 6.) On December 16, 2010, defendant pleaded guilty to possession of a controlled substance, which is a misdemeanor offense. (Id.) The other charges were withdrawn. (Id.) Defendant committed the foregoing misdemeanor offense while he was on bond at criminal

9

docket number 2514-2008. (Id.) According to Truesdell's testimony and the police report with respect to defendant's arrest on February 18, 2009, a state trooper effectuated a traffic stop on a vehicle driven by defendant. The state trooper smelled marijuana odor coming from the vehicle. The state trooper conducted a search of defendant's person for officer safety and found on defendant's person: two marijuana "roaches;" plastic baggies containing marijuana; two individually wrapped balls of crack cocaine weighing approximately four ounces; and $427 in cash. (H.T. 8/4/14 (ECF No. 697) at 10; Gov't Ex. 2 at 4.)

On February 15, 2013, defendant was issued a summons for possession of a controlled substance and disorderly conduct. (Pretrial Services Report at 7.) On April 25, 2013, defendant pleaded guilty to the disorderly conduct offense and the charges for possession of a controlled substance were withdrawn. (Id.) Truesdell testified that a Pittsburgh Police officer effectuated a traffic stop on a vehicle driven by defendant. Lloyd Bell was a passenger in the vehicle. As the officer approached the vehicle, he saw Lloyd Bell "frantically moving around, bend forward at the waist and quickly sit back up." (Gov't Ex. 3 at 2.) The officer wrote in his report that "[b]ased on [his] training, experience and numerous firearms/narcotics arrest[,] [he] believed that Lloyd Bell was attempting to conceal or retrieve a weapon or contraband." (Id.) Defendant and Lloyd Bell were patted down for weapons. The reporting officer found a firearm under the passenger seat. Lloyd Bell was placed under arrest because he did not possess a concealed carry permit and was prohibited from carrying a firearm. (Id.) The officer also found a blunt of marijuana in the ashtray of the vehicle and $9,400 in United States currency in the glove box. (Id.) Defendant told the officers he was unemployed and the money was from tax returns. The money was packaged "in two large stacks each containing five smaller stacks for a total of ten stacks each banded together with a black rubber band." (Id.) According to the reporting officer,

"the packaging of the money is consistent with drug proceeds." (Id.) The money was sent for an ion scan to detect the presence of narcotics on the money. (Id.) Truesdell testified that the money tested positive for the presence of cocaine. (H.T. 8/4/14 (ECF No. 697) at 10.) A confidential source involved in the case pending before this court stated that defendant told him that a "young bucco in the car" was going to take the gun charge for him. (Id. at 13.)

On February 16, 2013—the day after defendant received a summons for possession of a controlled substance and disorderly conduct—police officers from the Borough of Sharpsburg Police Department found on defendant suspected Vicodin pills, $500, and two cellular telephones. (Gov't Ex. 4 at 4.) The officers found eight additional cellular telephones in defendant's vehicle. (Id.) Defendant was charged with a misdemeanor offense for possession of drug paraphernalia. (Pretrial Services Report at 7.) On February 16, 2013, defendant pleaded guilty to that offense. (Id.)

On June 23, 2013, defendant was arrested for aggravated assault, simple assault, recklessly endangering another person, and harassment. (Pretrial Services Report at 8.) Truesdell testified that Jamekia Denise Robinson ("Robinson") stated that defendant stabbed her. (H.T. 8/4/14 (ECF No. 697) at 19.) The charges against defendant were nolle prossed because Robinson was murdered. (Id. at 20; Def. Ex. 1.) Defendant was not charged or arrested for Robinson's murder. (Id.)

On July 11, 2013, the Pennsylvania State Police pulled over a vehicle driven by Anthony Lloyd[6] that was traveling from Detroit, Michigan, to Pittsburgh, Pennsylvania. (Gov't. Ex. 5; H.T. 8/4/14 (ECF No. 697) at 16.) Defendant was a passenger in the vehicle and law enforcement found documents suggesting defendant rented the vehicle. (Gov't. Ex. 5 at 5.) The

---

[6] The Pretrial Service Report provides that defendant has a brother named Anthony Lloyd with whom defendant has "some" contact. (Pretrial Services Report at 1.)

11

state troopers learned there was an active arrest warrant for defendant. (Id.) Defendant was taken into custody. (Id.) Defendant admitted to the state troopers that there was a small bag of marijuana in his shoe. (Id.) The reporting state trooper found under the front passenger seat a condom filled with what he suspected was cocaine. (Id.)

## II. Standard of Review

The court's standard of review of a magistrate judge's denial of pretrial detention is de novo. United States v. Delker, 757 F.2d 1390, 1394 (3d Cir.1985).

## III. Discussion

The structured system of the Bail Reform Act, 18 U.S.C. § 3141 et seq., regarding the release or detention of a defendant before trial seeks to ensure that the interests of the defendant and the public are carefully considered and contemplated before release or detention is ordered. The court is charged with holding a hearing to determine whether there exists "any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release. If the court determines no sufficient condition or combination of conditions exists, however, the court may order that a defendant be detained without bail pending trial.

### A. Rebuttable Presumption

In this case, a rebuttable presumption applies that no conditions or combinations of conditions will reasonably assure the appearance of defendant as required or the safety of the community. Section 3142(e)(3) provides:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as

> required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . *(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)* [or] (B) an offense under section 924(c), 956(a), or 2332b of this title[.]

18 U.S.C. § 3142(e)(3) (emphasis added).

There is probable cause to believe defendant committed an offense that falls within the category of offenses listed in § 3142(e)(3)(A) because a grand jury returned an indictment charging defendant with conspiracy to distribute and possess with intent to distribute five kilograms or more of methamphetamine, and one kilogram or more of heroin, from January 2011 to September 2013, a violation of 21 U.SC. § 846. The maximum statutory penalty for the offense at count one is ten years if it is defendant's first felony drug conviction that is final or twenty years if it is defendant's second felony drug conviction that is final. 18 U.S.C. § 841(a)(1)(A)(i) and (vii). Thus, subject to rebuttal by defendant, it is "presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e). Defendant at the hearings before the magistrate judge and this court did not contest the application of the rebuttable presumption to this case.

### B. The § 3142(g) factors

In producing evidence to rebut the presumption, a defendant looks to the four factors set forth in § 3142(g), which the court must consider in determining whether pretrial detention is warranted. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (to determine whether the presumption of dangerousness has been rebutted, the court should consider the factors set forth in § 3142(g)). The four factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of

section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including--

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### C. Danger to the Community

A defendant may offer evidence to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of the community if defendant is released pending trial. A defendant must produce only "some evidence" to rebut the presumption set forth in § 3142(e). See United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). The quantum of evidence required to rebut the presumption is not high; rather, the defendant need only come forward with credible evidence conflicting with the presumption. Id. at 383. When a defendant produces conflicting evidence, the presumption does not disappear. The rebutted presumption retains evidentiary weight. See United States v. Carbone, 793 F.2d 559, 560-61 (3d

Cir. 1986) (per curiam); United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam).

Safety of the community is implicated not only by violence, but also by narcotics trafficking. In cases involving drug offenses, the danger to the community is the likelihood that the defendant will, if released, traffic in illicit drugs. United States v. Perry, 788 F.2d 100, 111 (3d Cir. 1986). The combination of drugs and guns constitutes a very serious danger to the community. United States v. Pitts, Crim. No. 09-204, 2010 WL 3303800, at *4-5 (W.D. Pa. Aug. 19, 2010) ("Several district courts have found that the combination of guns and drugs constitutes a danger to the community.") (citing United States v. Levy, Crim. No. 08-393, 2008 WL 4978298, at *2 (E.D. Pa. Nov. 20, 2008); United Sates v. Miller, Crim. No. 10-4058, 2010 WL 3035753, at *4 (N.D. Iowa Aug. 3, 2010); United States v. Francis, Crim. No. 01-60, 2001 WL 899635, at *5 (S.D. Ind. June 8, 2001)).

1. **The nature and circumstances of the offense charged**

The offense for which defendant is charged is a serious drug offense involving a large amount of heroin and methamphetamine and carries with it significant statutory mandatory minimum terms of imprisonment dependent on defendant's criminal history. Defendant in this case did not present evidence with respect to the first factor listed in § 3142, i.e., the nature and circumstances of the offense charged. This factor weighs in favor of defendant being detained pending trial.

2. **The weight of the evidence against defendant**

With respect to the second factor, i.e., the weight of the evidence against defendant, defendant's counsel argued that out of the thousands of telephone calls intercepted as part of the wiretap investigation, defendant was a party to .048 percent of the telephone calls. Defendant did

not present evidence to support this argument. The government, however, did not dispute defense counsel's analysis of the telephone calls. Bell testified on cross-examination that out of the thousands of telephone calls intercepted as part of the wiretap investigation, there were approximately six to eight telephone calls to which Beggarly *and* defendant were parties. Defense counsel argued—but did not present evidence to support—that a large percentage of the telephone conversations intercepted as part of the wiretap investigation to which defendant was a party involved "toilets and cabinets and home repairs." (H.T. 8/4/14 (ECF No. 697) at 57.) Defendant argued that Miles and Carde had a relationship involving home remodeling, and noted that Carde referred to home remodeling in his letters to Miles. Defendant's brother testified that defendant purchased homes, repaired them, and rented or sold them.

Defendant's arguments and the evidence he relies upon to show that the weight of the evidence presented by the government against defendant is not overwhelming. The government, however, showed that based upon the wiretap investigation and confidential informants defendant had relationships with Carde and Beggarly that involved buying and selling cocaine, and that he was a member of the very serious drug conspiracy charged in the indictment. That evidence at this stage of the proceedings has moderate weight. This factor, therefore, weighs against defendant being released pending trial.

### 3. The history and characteristics of defendant

With respect to defendant's personal characteristics, he presented evidence that he has strong community ties to the Western District of Pennsylvania[7] and family ties to his child, girlfriend, and brother. Defendant is a lifelong resident of the Western District of Pennsylvania.

---

[7] As the court noted on the record at the hearing on October 7, 2015, community ties have limited weight in the context of assessing whether a defendant presents a danger to the community. United States v. Delker, 757 F.2d 1390, 1396 (3d Cir. 1985).

Defendant's girlfriend and brother testified that he is a great father and they are willing to serve as third-party custodians for him. Defendant, if released, could assist his girlfriend in taking care of their child and provide childcare for her when his girlfriend is working.

Defendant has employment history. He worked for a moving company and a bar. According to defendant's girlfriend, he has an employment opportunity with a union. His brother testified that defendant in the past purchased, repaired, and sold homes. Defendant while incarcerated earned two certificates, one in computer literacy and another for pre-apprentice test preparation.

Defendant, however, has had frequent interactions with law enforcement involving drugs and indicia of drug distribution; indeed, defendant has one felony drug conviction. Defendant sustained the felony drug conviction while serving a term of probation for another offense. Defendant's alleged participation in the conspiracy charged in this case occurred while defendant was otherwise employed.

In light of defendant's familial ties, work history, and efforts to better himself while incarcerated, this factor—at best—is neutral. It is problematic for defendant that (1) community ties are given limited weight, and (2) while employed, he was charged with the conduct underlying the very serious charges in this case. Under those circumstances, his personal characteristics are neutral and do not weigh in favor of his release pending trial.

4. **The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release**

With respect to the fourth factor, the danger posed to the community if defendant was released, defendant argued that home detention with electronic monitoring would be sufficient to protect the community because his alleged contacts with respect to drug distribution were

arrested and are incarcerated in this case. Defendant's argument is not sufficient for this factor to weigh in his favor.

The court must consider the nature and seriousness of the danger to any person or the community that would be posed by defendant's release. In other words, the court must *predict* whether defendant is likely to engage in drug trafficking if released pending trial. Perry, 788 F.2d at 114 ("[T]he dangerousness determination involves a prediction of the detainee's likely future behavior[,]" i.e., a prediction about "the likelihood that the defendant will, if released, commit one of the proscribed federal offenses."). "Such a prediction explores not the external world of past events but the inner territory of the detainee's intentions." Id. at 114. The court, however, can only look to the record before it. The government presented evidence that defendant in the past while on bond or otherwise employed violated conditions of bond by committing a drug crime. The government argued that electronic home monitoring would not be sufficient to prevent defendant from engaging in drug trafficking. In light of defendant continuing to commit crimes and trafficking in drugs while employed or on bond or otherwise under supervision of the court, defendant presents a danger to the community that he will continue to traffic in drugs if released pending trial. In other words, there are no conditions or set of conditions that will ensure the safety of the community if defendant is released pending trial.

5. **Conclusion**

Defendant did not present argument or evidence sufficient to rebut the presumption of detention in this case. The seriousness of the offense, the weight of the evidence, the danger he poses to the community, and the presumption, which retains evidentiary weight, all weigh in favor of detention in this case. His personal characteristics are—at best—a neutral factor in light of his familial support, work history, and opportunity for employment. Under those

circumstances, even if defendant had rebutted the § 3142(e) presumption, this court finds after considering the record as a whole, the government showed by clear and convincing evidence that there is no condition or set of conditions which would reasonably assure that defendant would not engage in drug trafficking while on release.

**D.     Risk of Flight**

The magistrate judge found that defendant did not present a risk of flight. The government at the hearing before this court on September 21, 2015, stated it was not contesting that finding. The court need not, therefore, address whether defendant poses a risk of flight.

**IV. <u>Conclusion</u>**

Defendant did not meet his burden to set forth some evidence under the § 3142(e) factors to rebut the presumption of detention in this case. Even if defendant met his burden, however, the government showed by clear and convincing evidence that defendant poses a risk of danger to the community, i.e., he is likely to engage in drug trafficking if released prior to trial, which cannot be mitigated by imposing conditions of release. For those reasons, the court granted defendant's motion to the extent he requested a hearing with respect to his detention status, but denied the motion in all other respects and ordered defendant be detained pending trial.

An appropriate order will be entered.

BY THE COURT,

Dated: November 6, 2015         <u>/s/ JOY FLOWERS CONTI</u>
                                Joy Flowers Conti
                                Chief United States District Judge